## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JANE DOE, by and through parent and next friend JANE ROE, | |
| Plaintiff, | Civil Action File No. |
| v. | 1:20-cv-00975-AT |
| FULTON COUNTY SCHOOL DISTRICT, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) and the Court's Order [Doc. 19], Plaintiff Jane Doe ("Doe" or "Plaintiff"), a minor, brings this Amended Complaint against the Fulton County School District ("FCSD") through her parent Jane Roe ("Roe") seeking damages and injunctive relief based on violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, ("Title II" or "ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Section 504" or "Rehabilitation Act"), Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), and the Georgia Open Records Act, O.C.G.A. § 50-18-70 *et seq.* ("ORA").

**PARTIES, JURISDICTION AND VENUE**

1.

Doe is fourteen (14) years old and suffers from physical and mental disabilities.  As is common in cases in this Circuit and throughout the country involving minor children and sexual abuse, Doe is proceeding under a pseudonym.

2.

Roe is the mother and legal guardian of Doe, her minor daughter.  Doe brings this action pursuant to Federal Rule of Civil Procedure 17(c), by and through Roe as her next friend, parent, and legal guardian.

3.

Doe is a special needs student enrolled at a Middle School operated by FCSD. Doe intends to remain enrolled in FCSD schools throughout her remaining Middle and High School years.

4.

As a student at an FCSD school, Doe is subject to the policies and procedures promulgated by the Fulton County Board of Education ("BOE").

5.

Given her age and mental and physical disabilities, as well as the highly personal, sexually graphic and disturbing nature of the allegations set forth in Doe's

Complaint, she has a substantial privacy right which outweighs any customary presumption of openness in judicial proceedings. As such, she is entitled to proceed anonymously in this litigation.

6.

Doe is at risk of social ostracism, mental and emotional harm, and possibly physical harm, if her anonymity is not maintained and her identity is disclosed. Because the revelation of Roe's identity, as Doe's mother, would necessarily disclose Doe's true identity, Roe's anonymity must also be maintained.

7.

The true identity of Doe is known to FCSD. The facts and allegations underlying Doe's claims are also open and known to FCSD. As such, FCSD is not prejudiced in any manner by Doe and her mother Roe proceeding anonymously.

8.

Defendant FCSD is a public school district serving Fulton County, Georgia. FCSD serves the public educational needs in all areas of Fulton County that lie outside the municipal boundaries of the City of Atlanta.

9.

FCSD may be served with the Amended Complaint by service upon its counsel of record for this matter.

10.

FCSD is a political subdivision of the State of Georgia. At all relevant times that Doe was and has been enrolled in schools within FCSD, FCSD has been the recipient of substantial federal funding.

11.

This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, as it involves claims arising under federal law, as well as 28 U.S.C. § 1367, and personal jurisdiction over FCSD as it conducts its business of educating and protecting public schools in this school district.

12.

FCSD operates 58 elementary schools, 19 middle schools, 15 high schools, and seven charter schools all located within this Judicial District, including the Middle School Doe is zoned to attend.  Venue is therefore proper in this Court as the wrongdoing giving rise to Doe's claims and causes of action which arose and took place in this judicial district.

## **FACTS**

### **Doe's Mental and Physical Disabilities**

13.

Doe has been a disabled person from birth.  She has and continues to have neurodevelopmental disabilities that impede and limit her physical and mental

capabilities.  Doe functions at a cognitive and communicative level far below her actual age.

14.

Doe has been diagnosed and classified as an eligible student with intellectual disabilities under the Individuals with Disabilities Education Act ("IDEA").  Her disabilities are believed to be lifelong or permanent.  She is wholly dependent on her family, caregivers, and educators in the performance of her everyday major life activities and she has been provided with an Individual Education Plan ("IEP").

15.

Due to her cognitive disabilities, Doe is unable to verbally communicate effectively with her caregivers and educators at FCSD.  As part of her IEP, FCSD was required to provide Doe with an electronic iPad tablet to allow her to communicate with her caregivers and educators at FCSD.

16.

While displaying a sweet and innocent young child-like nature due to her cognitive and communicative deficiencies, Doe struggles to interact with and clearly communicate with other individuals and to express her feelings and protect herself in potentially dangerous interactions with other people.

## **Sexual Abuse of Doe in the Care and Custody of FCSD**

### 17.

Doe is dependent on school-provided public transportation to and from the public educational services provided to her at her assigned Middle School.  She is transported to Middle School via a special needs specific school bus ("Bus") that is owned, operated and maintained by FCSD.

### 18.

The Bus used to transport Doe is one of the smaller models specifically designed for special needs students.  The Bus contains 3-4 rows of benches for students to sit on and an open area where the benches have been removed in order to accommodate and secure wheelchairs.

### 19.

The Bus was equipped with electronic safety monitors so the Bus driver could monitor all passengers and ensure they remained seated at all times during the drive to and from school.  The bus is also equipped with a wide-view safety mirror that provided the Bus driver visual access of the interior of the Bus.

### 20.

Prior to the incidents at issue, the Bus was staffed by both an FCSD employee driver and an FCSD employee Monitor.

21.

FCSD implemented the employee monitoring system on the Bus based on its actual knowledge that special needs school buses and disabled students, including Doe, require active supervision to ensure their safety and welfare.  FCSD placed the Monitor on Doe's bus specifically due to her severe communication and cognitive deficiencies.

22.

Before the serial incidents of sexual abuse underlying Doe's claims arose, FCSD elected to remove the employee monitor and staff the Bus with only a driver.

23.

FCSD has sought to justify this decision as being based on "data driven reasons."  In other words, FCSD wanted to eliminate the Monitor position to avoid having to continue to compensate the Monitor.

24.

The Bus was also equipped with audio and video monitoring equipment that recorded all the events that occurred on the Bus on a daily basis. The video footage and audio recordings could be accessed and reviewed on a daily basis.

25.

All special education bus drivers employed by FCSD, including the driver of the Bus that transported Doe, are specifically charged by state law with the following duties, among others:

    a.  Operate the school bus in a safe and efficient manner;

    b.  Maintain order of student passengers;

    c.  Report unsafe acts or conditions;

    d.  Provide maximum safety for passengers while on the bus;

    e.  Maintain student discipline on the bus to ensure student safety;

    f.  The bus driver must have complete control of the bus to ensure the safety of everyone; and

    g.  The bus driver must intervene when necessary.

(Georgia Department of Education, SE7: School Bus Driver Job Description).

26.

The Bus driver's designated and assigned duties created an express obligation to prevent, correct, and protect a passenger student from any act of discrimination, harassment, physical altercations, and sexual abuse that occurred on the Bus.

27.

The Bus driver in this case was completely derelict in his duties and repeatedly exhibited a willful and deliberate indifference to maintaining student discipline and ensuring student safety.

28.

Numerous explicit acts of sexual assault and rape perpetrated against Doe by other students on the Bus on multiple days were recorded by the Bus's surveillance equipment.

29.

On April 4, 2019, a special needs student referred to herein as Student A left his bench seat while the Bus was in transit and moved over to the bench seat where Doe was sitting.  Student A then proceeded to grope Doe's breasts and attempted to kiss her breasts through her shirt before returning to his seat.

30.

That same day, another special needs student referred to herein as Student B also sexually abused Doe. Emboldened by the lack of discipline and restraint for Student A, Student B also left his seat and moved to the seat where Doe was sitting. Student B then groped and rubbed Doe's breasts and kissed her breasts through her shirt.

31.

On April 10, 2019, Student B again stood up and moved to Doe's seat while the Bus was in transit. He then fully exposed his penis and forced Doe to touch it while he grabbed her breasts and put his mouth on her breasts.

32.

The pattern of sexual assault on Doe while being transported by the Bus continued unabated and without the intervention of the Bus driver, the FCSD employee charged with preventing all such misconduct occurring on the Bus. On April 11, 2019, Student B again moved from his seat to Doe's seat and completely removed Doe's shirt. Student B then fondled and kissed her breasts while he masturbated in front of Doe.

33.

On April 15, 2019, Student B again moved to sit next to Doe and forced her to touch his penis over his clothing and masturbate him while they were on the Bus.

34.

On April 16, 2019, Student B moved to sit next to Doe and once again took his penis out of his pants, exposed it to Doe, and made Doe fondle his penis while the Bus was in transit. While this sexual abuse was occurring, Student B also removed Doe's shirt completely and put his mouth on her breasts.

35.

On April 17, 2019, Student B crawled under seats until he reached the seat where Doe was sitting and forced Doe to touch his exposed penis.  He then physically pushed her head down toward his exposed penis with his hands in an attempt to force Doe to perform oral sex on him.

36.

On April 18, 2019, again while the Bus was in transit, Student B moved to the seat next to Doe, removed all of her clothing and tried to climb on top of her.  Student B then performed oral sex on Doe while she sat in her Bus seat.  Student B then masturbated while sitting next to Doe.

37.

On April 19, 2019, Student B again moved to Doe's seat and tried to force Doe to perform oral sex on him and again fondled her breasts.

38.

After more than two weeks of near daily sexual abuse, the sexual assaults against Doe culminated on April 20, 2019.  According to FCSD, the video footage from April 20, 2019, shows Student B slapping Doe's exposed breasts.  Then, after he removed all of Doe's clothing and all of his clothing, he performed oral sex on her.  Student B then physically placed Doe on top of him and he vaginally penetrated her with his penis forcing sexual intercourse.

39.

The multiple acts of sexual assault and rape over a period of almost two weeks could not have taken place without the knowledge and/or deliberate indifference of the Bus driver, who never once intervened to protect Doe and report Students A and B to FCSD and the police.

40.

It was not until April 20, 2019, after Doe had been stripped naked, physically battered and raped, that the Bus driver vaguely mentioned to another FCSD employee that he had "noticed something" on his last route.

41.

After Roe was told by an FCSD employee that the Bus driver had reported "something" that perhaps involved physical contact, Roe took Doe to a medical facility for treatment and evaluation. The treating physicians confirmed vaginal penetration consistent with rape.

42.

Both Student A and Student B had exhibited dangerous behaviors in the past. These behaviors were known to FCSD. Despite having knowledge that Doe and other students faced a substantial risk of abuse at their hands on the Bus, the Monitor was removed.

43.

FCSD's removal of the employee Monitor from the Bus constitutes a reckless disregard for the safety of Doe as there was no one to stop the sexual abuse and assault that Doe repeatedly suffered from Student A and Student B over a seventeen-day period.

44.

At the time the sexual assaults were occurring, culminating in her rape, FCSD was aware that Doe's electronic iPad tablet was not functioning.  Without her tablet, Doe could not communicate the vicious assaults that were being perpetrated against her on a daily basis.

45.

It was only after the seventeen-day long series of sexual assaults culminating in rape that FCSD replaced Doe's iPad tablet.

46.

Following the Bus Driver's report of seeing "something" after days of deliberate indifference, FCSD reversed its decision to remove the Monitor and placed one back on the Bus.

## COUNT I- TITLE II OF THE ADA

47.

By this reference, Doe incorporates all the above factual statements as if fully stated herein.

48.

Title II of the ADA states: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

49.

The ADA defines "public entity" as including "any State or local government." 42 U.S.C. § 12131.

50.

FCSD is a "public entity" within the meaning of Title II and is covered by the ADA.

51.

Title II of the ADA defines a qualified individual with a disability as "an individual with a  disability who, with or without reasonable modifications to rules, polices, or practices…meets the essential eligibility requirements for the receipt of

services or the participation in programs or activities provided by a public entity."
42 U.S.C. § 12131.

52.

Doe is a qualified individual with disabilities within the meaning of Title II
and meets the essential eligibility requirements for the receipt of FSCD's services,
programs, or activities.

53.

Safe and appropriate transportation systems constitute an integral service,
program, or activity within the meaning of Title II. See Woods v. City of Utica, 902
F. Supp 2d 273, 281 (N.D.N.Y. 2012); Sayers v. City of New York, No. CV-04-
0907, 2007 WL 914581, at *8 (E.D.N.Y. Mar. 23, 2007).

54.

FCSD denied Doe the benefits of safe and appropriate transportation: (1) by
denying her safe transportation services free from sexual and physical assault; (2)
by failing to properly train and instruct its transportation operators responsible for
transporting Doe; (3) by failing to establish and implement policies and procedures
regarding safe and appropriate transportation for students with disabilities; (4) by
failing to provide her with the tablet she needed for communication; and (5) by
removing Monitors from school buses that transport special needs children.

55.

FCSD was deliberately indifferent to Doe's safety and medical needs when it failed to properly train and instruct its transportation operators, including the Bus driver, on how to maintain surveillance of the student passengers during the transportation of said students to and from school.

56.

FCSD was deliberately indifferent to Doe's safety and medical needs when it failed to establish and/or properly implement policies and procedures, including the use of monitors, training bus drivers regarding safe and appropriate transportation of students with disabilities, including how to properly use the surveillance equipment effectively and establishing a regular practice of reviewing surveillance tapes after Monitors were removed from special needs school buses.

57.

FCSD was deliberately indifferent to the sexual abuse and rape of Doe.

58.

FCSD engaged in discrimination against Doe by denying her the benefits of safe and appropriate transportation.

59.

Unlike FCSD students who do not have mental impairments and who could report abuse, Doe was in fact a child with a significant mental impairment that

prevented her from reporting the horrific sexual abuse she had to endure.  Thus, she was deprived of her right to the same services, programs and utilities as non-disabled students.

60.

Doe is entitled to relief under Title II of the ADA, including an award of monetary damages to be determined by the discretion of the jury, as well as an award of reasonable attorneys' fees and costs of litigation incurred in establishing the liability of FCSD for her injuries to be determined by the Court.

**COUNT II- SECTION 504 OF THE REHABILITATION ACT**

61.

By this reference, Doe incorporates all the above factual statements as if fully stated herein.

62.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (2000).

63.

FCSD is an entity that receives federal funds in numerous areas, including its special education programs.

64.

FCSD denied Doe the benefits of safe and appropriate transportation: (1) by failing to provide transportation free from sexual and physical assault; (2) by failing to properly train and instruct its transportation operators responsible for transporting Doe; and (3) by failing to establish and implement policies and procedures regarding safe and appropriate transportation of students with disabilities, including the use of Bus monitors when it had knowledge that such monitors were necessary to ensure the safety of disabled students, and it had knowledge of the behavioral problems of Students A and B and Doe's vulnerability to being bullied and abused.

65.

FCSD was deliberately indifferent to Doe's safety and medical needs when it failed to properly train its transportation operators or provide safe transportation services, including the Bus driver.

66.

FCSD was deliberately indifferent to Doe's safety and medical needs when it failed to establish, implement and maintain policies and procedures regarding safe and appropriate transportation of students with disabilities.

18

67.

FCSD discriminated against Doe through its deliberate indifference to the sexual assaults and rape she endured.

68.

FCSD engaged in discrimination by providing safe and appropriate transportation for non-disabled students as a whole yet failing to do the same for Doe.

69.

Doe is entitled to relief under the Rehabilitation Act, including an order that FCSD provide adequate training and instruction to all transportation operators responsible for students with disabilities.

70.

Doe is entitled to recover compensatory damages for the harm she has experienced, including her physical injury, fear and other forms of emotional distress, as a result of the violations of the Rehabilitation Act described herein, due to FCSD's deliberate indifference to Doe's rights, as well as her attorneys' fees and costs of litigation.

## COUNT III- TITLE IX

### 71.

Doe incorporates by this reference all the above factual allegations as if fully set forth herein.

### 72.

The United States Supreme Court has held that an implied right of action for money damages exists pursuant to Title IX, and that such a claim can result from student-on-student sexual harassment.

### 73.

FCSD is a recipient of federal funding, including in connection with its special needs education program in which Doe was enrolled.

### 74.

The near daily sexual assaults of Doe by at least two other students on the Bus while in transit from the school were so severe and pervasive, and objectively offensive, such that they effectively barred Doe's access to an educational service or benefit, i.e., public transportation to public school provided to all students in FCSD.

### 75.

FCSD maintained substantial control Student A and Student B, the harassers, abusers and rapists of Doe, in the environment (unsupervised bus) in which the discrimination and abuse occurred.  FCSD was in substantial control over that same

environment at all times relevant and failed to provide Doe a safe environment in her transportation by FCSD to and from school.

76.

FCSD delegated to the Bus driver, just as it does to teachers and other in-class FCSD employees that work inside the schools, the authority and obligation to prevent the alleged discrimination and sexual harassment of Doe and institute effective corrective measures to prevent the discrimination and harassment.

77.

The Bus driver had actual knowledge of the discrimination that was occurring against Doe prior to his report of seeing "something" on the last day of Doe's seventeen-day ordeal of sexual abuse and rape.

78.

FCSD had actual knowledge of the substantial risk of abuse to disabled students like Doe.

79.

FCSD, through the Bus driver and others, exhibited deliberate indifference to the discrimination and harassment directed at Doe.

80.

As a result of the Bus driver's deliberate indifference to discrimination and harassment, Doe has suffered damages, including emotional distress, in an amount

to be determined at trial.  Doe is entitled to recovery of these damages as well as her attorneys' fees and costs of litigation.

## COUNT IV- OPEN RECORDS ACT

### 81.

Doe incorporates by this reference all the above factual allegations as if fully set forth herein.

### 82.

Under the ORA, an agency is required to "produce for inspection all records responsive to a request within a reasonable amount of time not to exceed three business days of receipt of a request."  O.C.G.A. § 50-18-71(b).

### 83.

FCSD, a school district, is an agency within the meaning of O.C.G.A. § 50-18-71(b).

### 84.

Doe, through her counsel, has repeatedly requested access to the video and audio footage from the Bus in question during the relevant period in writing pursuant to the ORA.

### 85.

FCSD failed and wholly refused to provide counsel for Doe with a copy of the requested surveillance video and audio footage.

86.

FCSD did not act in good faith when it failed to fully respond to Doe's ORA request.

87.

Doe is entitled to an order requiring immediate production of the requested audio and video footage from the bus.

88.

Doe is entitled to attorneys' fees and costs of litigation incurred in bringing this claim.  O.C.G.A. § 50-18-73(b).

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

1. Award Plaintiff compensatory damages in an amount reasonable and commensurate with the losses imposed upon her by Defendant's unlawful and discriminatory acts, including her pain and emotional distress;

2. Award Plaintiff injunctive relief, including immediate production of the relevant video and audio recordings from the bus during the time in question;

3. Award Plaintiff pre-judgment and post-judgment interest at the maximum rates allowable by law;

4. Make Plaintiff whole by granting her special damages for all out-of-pocket costs and expenses that she would not have incurred but for Defendant's

unlawful conduct, including costs incurred in bringing this action and her reasonable attorneys' fees; and

5.    Grant such additional relief as this Court deems necessary, appropriate, proper, or just.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted this 1st day of June, 2020.

> */s/ M. Travis Foust*
> A. Lee Parks, Jr.
> Georgia Bar No. 563750
> lparks@pcwlawfirm.com
> M. Travis Foust
> Georgia Bar No. 104996
> tfoust@pcwlawfirm.com
> **Parks, Chesin & Walbert, P.C.**
> 75 14th Street, 26th Floor
> Atlanta, Georgia 30309
> Phone: (404) 873-800
> Fax: (404) 873-8000
>
> */s/ Brad Kaplan*
> Brad Kaplan
> Georgia Bar No. 406819
> kaplanfirmpc@gmail.com
> **The Kaplan Firm, P.C**.
> 1197 Canton St.
> Roswell, Georgia 30075
> Phone: (770) 552-7024

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing was prepared using Times New Roman font, 14-point type, which is one of the font and point selections approved by the Court in L.R. 5.1(B).

Respectfully submitted: June 1, 2020.

<u>*/s/ M. Travis Foust*</u>
M. Travis Foust
Georgia Bar No. 104996
tfoust@pcwlawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2020, I filed the foregoing **FIRST AMENDED COMPLAINT** using the CM/ECF system which will automatically send notification of such filing to all counsel of record.

Respectfully submitted: June 1, 2020.

*/s/ M. Travis Foust*
M. Travis Foust
Georgia Bar No. 104996
tfoust@pcwlawfirm.com