IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| JANE DOE, by and through parent and next friend JANE ROE, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:20-cv-00975-AT |
| FULTON COUNTY SCHOOL DISTRICT, | : | |
| Defendant. | : | |

## OPINION AND ORDER

This matter is before the Court on Defendant Fulton County School District's Motion to Dismiss the Plaintiff's First Amended Complaint. [Motion, Doc. 23.] For the following reasons, the Motion is **GRANTED in part** and **DENIED in part.**

## I.   Procedural History

Plaintiff ("Jane Doe") filed her Complaint through her parent ("Jane Roe") on March 3, 2020. (Doc. 1.) On May 4, 2020, Defendant filed a Motion to Dismiss. (Doc. 17.) On June 1, 2020, Plaintiff filed a First Amended Complaint, rendering that motion moot. (First Amended Complaint ("FAC"), Doc. 21.) On June 15, 2020, Defendant Fulton County School District ("FCSD") filed the instant Motion to Dismiss the First Amended Complaint. (Motion, Doc. 23.) Plaintiff timely responded in opposition. (Doc. 24.) On July 7, 2020, the United States of America

filed a Statement of Interest, opposing dismissal of the case for various reasons discussed infra. (Statement of Interest, Doc. 26.) On July 23, 2020, the Defendant replied in support of its motion, addressing arguments made in both the Plaintiff's Response and the Government's Statement of Interest. (Reply, Doc. 30.)

### A. First Amended Complaint

At the time that Plaintiff, "Doe"[1] filed her Complaint, she was fourteen years old and suffered "from physical and mental disabilities." (First Amended Complaint, Doc. 21 at 2.) Doe alleges that she has been disabled since birth, and that due to her "neurodevelopmental disabilities" she "functions at a cognitive and communicative level far below her actual." (FAC, Doc. 21 at 4–5.) Accordingly, Doe alleges that she "has been diagnosed and classified as an eligible student with intellectual disabilities under the Individuals with Disabilities Education Act ("IDEA")." (*Id*. at 5.) Doe alleges that she is a "special needs student enrolled at a Middle School operated by [Defendant,] FCSD." (*Id*. at 2.) Doe alleges that because of her "cognitive disabilities, [she] is unable to verbally communicate effectively with her caregivers and educators at FCSD. As part of her [Individualized Education Plan], FCSD was required to provide Doe with an electronic iPad tablet to allow her to communicate with her caregivers and educators at FCSD." (Doc. 21 at 5.)

---

[1] Plaintiff and her mother proceed under pseudonyms due to the graphic, personal, and sexual nature of the allegations in the case, and because Doe is a minor child. (*See* FAC, Doc. 21 at 2–3.) The true identity of Doe and Roe are known already to FCSD. (*Id*.)

Doe alleges that she "is dependent on school-provided public transportation to and from ... her Middle School. She is transported to Middle School via a special needs specific school bus that is owned, operated and maintained by FCSD." (Doc. 21 at 6 (parenthetical omitted).) The bus is "specifically designed for special needs students[,]" and "contains 3–4 rows of benches for students to sit on and an open area where the benches have been removed in order to accommodate and secure wheelchairs." (Doc. 21 at 6.) The complaint allegations indicate that the bus driver is provided a broad visual view the interior of the bus by a wide-view safety mirror. (*Id.*) The bus also "was equipped with electronic safety monitors so the Bus driver could monitor all passengers and ensure they remained seated at all times during the drive to and from school." (*Id.*) In addition, the bus was "equipped with audio and video monitoring equipment that recorded all the events that occurred on the Bus on a daily basis" and that could be daily  accessed and reviewed.  (*Id.* at 7.)

Doe alleges that prior to the incidents at the heart of this case, the bus was "staffed by both an FCSD employee driver and an FCSD employee Monitor." (Doc. 21 at 6–7.) Doe alleges that the Monitor was on the bus "specifically due to [Doe's] severe communication and cognitive deficiencies." (Doc. 21 at 7.) However, Doe alleges that at some point, FCSD decided to remove the Monitor and proceed with only a Driver on the bus for financial reasons. (*Id.*) Doe alleges that the Driver pursuant to FCSD policies had "an express obligation to prevent, correct, and protect a passenger student from any act of discrimination, harassment, physical altercations, and sexual abuse that occurred on the Bus." (*Id.* at 8.)

Doe alleges that between April 4, 2019 and April 20, 2019, she was repeatedly sexually assaulted by two other students on the bus. (FAC, Doc. 21 at 9–12.) According to the FAC, the assaults began on April 4th with Student A groping and attempting to kiss Doe's breasts through her shirt, followed by Student B – "[e]mboldened by the lack of discipline and restraint for Student A" – doing the same. (FAC, Doc. 21 at 9.) Doe alleges that the following day, Student B "fully exposed his penis and forced Doe to touch it while he grabbed her breasts and put his mouth on her breasts." (*Id.* at 10.) On April 11, 2019, Student B allegedly removed Doe's shirt and fondled her breasts while he masturbated in front of her. (*Id.*) On April 15, Student B allegedly forced Doe to "touch his penis over his clothing and masturbate him while they were on the Bus." (*Id.*)

Student B allegedly continued his assaults on Doe on a daily basis, including removing her shirt, taking his own penis out and making Doe fondle him, and attempting to force Doe to perform oral sex on him. (*Id.* at 10–11.) On April 18, 2019, Student B allegedly "removed all of [Doe's] clothing and tried to climb on top of her. Student B then performed oral sex on Doe[, and] then masturbated while sitting next to Doe." (*Id.* at 11.) The next day, Student B again allegedly tried to force Doe to perform oral sex on him and fondled her breasts. (*Id.*)

Doe alleges that after "more than two weeks of near daily sexual abuse, the sexual assaults against Doe culminated on April 20, 2019." (FAC, Doc. 21 at 11.) On this day, Student B allegedly slapped Doe's exposed breasts, then removed all of his own clothing, and all of Doe's clothing. (*Id.*) He then allegedly performed oral

sex on Doe and then "physically placed Doe on top of him and he vaginally penetrated her with his penis forcing sexual intercourse." (Doc. 21 at 11.)

Doe alleges that it was only after this incident that the Bus driver "vaguely mentioned to another FCSD employee that he had 'noticed something' on his last route." (Doc. 21 at 12.) Doe alleges that an FCSD employee told Roe that the driver reported "'something' that perhaps involved physical contract," and that Roe then took Doe to a medical facility where "treating physicians confirmed vaginal penetration consistent with rape." (*Id.*)

Doe alleges that the "multiple acts of sexual assault and rape over a period of almost two weeks could not have taken place without the knowledge and/or deliberate indifference of the Bus driver, who never once intervened to protect Doe and report Students A and B to FCSD and the police." (Doc. 21 at 12.)

Doe further alleges that Students A and B "had exhibited dangerous behaviors in the past[,]" and that these behaviors "were known to FCSD." (FAC, Doc. 21 at 12.) Doe alleges that, despite this knowledge, FCSD chose to remove the Monitor from the bus. (*Id.*) Doe construes the decision to remove the Monitor from the bus as showing "reckless disregard for the safety of Doe as there was no one to stop the sexual abuse and assault that Doe repeatedly suffered[.]" (Doc. 21 at 13.) Doe also alleges that during the time period in which the assaults occurred, "FCSD was aware that Doe's electronic iPad tablet was not functioning[,]" and that "[w]ithout her tablet, Doe could not communicate the vicious assaults that were being perpetrated against her on a daily basis." (Doc. 21 at 13.) Doe alleges that it

5

"was only after the seventeen-day long series of sexual assaults culminating in rape that FCSD replaced Doe's iPad tablet." (Doc. 21 at 13.) Doe also alleges that after the bus driver's report of seeing "something," FCSD "reversed its decision to remove the Monitor and placed one back on the Bus." (*Id*. at 13.)

Plaintiff brings discrimination claims under Title II of the ADA (42 U.S.C. § 12132), Section 504 of the Rehabilitation Act (29 U.S.C. § 794(a), Title IX, as well as claims under the Georgia Open Records Act[2] (O.C.G.A. § 50-18-71(b)).

### B. Motion to Dismiss

Defendant, FCSD, moves to dismiss all counts in the First Amended Complaint. (Motion, Doc. 23.) FCSD argues that the bus driver is not a "FCSD official with substantial supervisory authority," and that the Driver's alleged indifference to the sexual assaults does not impart liability on FCSD. (Motion, Doc. 23-1 at 2.) FCSD claims in the motion that Plaintiff's claims under the ADA, Section 504, and Title IX are invalid because "Plaintiff cannot hold FCSD vicariously liable for the alleged acts or omissions of the bus driver." (Doc. 23-1 at 7.) As for the Open Records Act claim, FCSD contends that the bus video "is not subject to disclosure [under the Georgia Open Records Act] because it contains federally protected, confidential student information and depicts child pornography." (Doc. 23-1 at 22.) FCSD argues that it cannot disclose the video without a Court Order to do so, or else FCSD would be exposed to criminal liability. (Doc. 23-1 at 23.)

---

[2] Doe alleges that the FCSD has refused to provide her counsel with a copy of the surveillance video and audio footage from the bus during the relevant time period. (FAC, Doc. 21 at 22–23.)

## C. Response and Statement of Interest

In her Response to the Motion, Plaintiff stresses that "[u]nlike the cases relied on by [FCSD], this was no 'one-off' incident randomly witnessed by a school janitor after school or a teacher acting as a chaperone at a school dance outside of normal hours. It was serial abuse Doe contends was intentionally ignored by the official whose job mandated that he put a stop to it." (Response, Doc. 24 at 2.) Doe states that "the special needs bus driver in question violated virtually every required component of his state mandated job description" by  never intervening to stop the course of physical harassment that was evident.  (Doc. 24 at 7.) Doe asserts that FCSD denied Doe the benefits of safe and appropriate non-discriminatory transportation, despite being on full notice of her communication limitations, accommodation requirements, and based on its "actual knowledge that special needs school buses and disabled students .... require active supervision to ensure their safety and welfare" during transportation. (FAC, Doc. 21 at 7, 15.) FCSD's decision to remove the Monitor from the bus, failure to adequately train the driver in his monitoring duties, failure to provide Doe with a working tablet for communication, and other related conduct that Plaintiff contends it will be able to prove through discovery (i.e,, lack of protocols for monitoring special education bus videos, prior knowledge of the harassing students' misconduct) in tandem with the driver's conduct provide a basis for establishing willful and deliberate indifference allegedly exhibited by the bus driver and school district. (Response, Doc. 24 at 8, 15–16.)

The United States of America (the "Government") filed a Statement of Interest ("SOI") in this case "to assist the Court in evaluating the sufficiency of Plaintiff's Title IX claim." (SOI, Doc. 26 at 3.) The SOI addresses only the Title IX claim specifically, but states that because "courts often look to Title IX precedent for guidance when adjudicating Title II and Section 504 cases," the Government's positions regarding whether a bus driver is an "appropriate person" under Title IX, "apply to Title II and Section 504 by extension." (Doc. 26 at 3, n.3.) The Government does not otherwise address or take any position on Plaintiff's Title II or Section 504 claims or on Plaintiff's Open Records Act claim. (*Id.*) The primary thrust of the SOI is that FCSD may be liable for the bus driver's action or inaction because, "[a] school district official's title—standing alone—cannot be the basis for categorically excluding the official as an 'appropriate person.'" (Doc. 26 at 4.) The Government, like the Plaintiff here, points out that well established law indicates that "whether a particular employee is an appropriate person is 'necessarily a fact-based inquiry because officials roles vary among school districts." (Doc. 26 at 16 (citing *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1256 (11th Cir. 2010)).)[3]

In its Reply, FCSD addresses both the Response and the SOI, asserting that "[t]his Court cannot presume the bus driver is an 'appropriate person' just because

---

[3] The Government usefully brings to the Court's attention the Title IX administrative regulations issued by the Department of Education on May 19, 2020, effective August 14, 2020, 85 Fed. Reg. 30,026 (May 19, 2020) (codified at 34 C.F.R. Part 106) (citing § 106.30). These regulations are consistent with the legal position and analysis the Government argues for in this case. As the regulations were not effective as of the date of the incidents at issue here, the Court does not reach its decision in this matter based on the regulations themselves, but it does consider the legal analysis adopted by the United States.

she has some supervisory authority over her riders." (Reply, Doc. 30 at 4.) FCSD stresses that "[t]hough she[4] could have physically intervened, orally admonished Students A and B, or alerted other officials about the harassment ... Plaintiff's allegations do not show that the driver could take corrective action *on behalf of FCSD* to terminate sexual harassment on her bus." (Doc. 30 at 5.)

## II.   Standard of Review

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007); Fed. R. Civ. P. 12(b)(6). The plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)); Fed. R. Civ. P. 8(a). In ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

---

[4] The gender identification of the bus driver is irrelevant for purposes of the current motion.  The Court notes, though, that the bus driver is referred to in Defendant's briefs both as a "he" and "she."

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Id.* at 556. A complaint may survive a motion to dismiss for failure to state a claim even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." *Id.*

### A. Title II, Section 504, and Title IX

Claims brought under Title II or Section 504 are examined using the same standards. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019) ("Given the textual similarities between the two statutes, 'the same standards govern' claims under both [Title II and § 504], and we 'rel[y] on cases construing [Title II and § 504] interchangeably.'") (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010)). To state a claim under either Title II or section 504, a plaintiff must establish "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Silberman*, at *id.* (quoting *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). Usually, a Title II or § 504 violation only entitles a plaintiff to injunctive relief. *Id.* (citing *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 831 (11th Cir.

2017)). In order for a plaintiff to receive damages, she "must clear an additional hurdle: [s]he must prove that the entity that [s]he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Id.* (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012). In the instant case, Plaintiff seeks both injunctive relief and monetary damages. The Defendant does not appear to contest whether Plaintiff has adequately stated a claim under Title II or section 504, but rather that Plaintiff cannot show "deliberate indifference" by the school district.

Courts look to Title IX case law "for guidance in examining discriminatory intent under § 504 [or Title II]." *J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017) (quoting *Liese*, 701 F.3d at 347). As such, all of Plaintiff's claims (except the Open Records Act count) will rise or fall on the same analysis. Under Title IX (and, by extension, Title II and § 504), a plaintiff may establish intentional discrimination by showing deliberate indifference. *Liese*, at 347–48. "Deliberate indifference is an exacting standard; school administrators will only be deemed deliberately indifferent if their response … or lack thereof is clearly unreasonable in light of the known circumstances." *J.S., III*, 877 F.3d at 987 (quoting *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1259 (11th Cir. 2010)). However, this is a fact specific analysis that must take into account the particular work relationships and responsibilities of the individuals involved and the factual circumstances  surrounding the events involved. Thus, in

a school setting, the conduct of individuals in a variety of positions may prove relevant to this analysis.

## III. Discussion

" '[S]exual harassment' is 'discrimination' in the school context under Title IX" and in certain narrow circumstances, a plaintiff may be able to recover for student-on-student harassment. *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1293 (11th Cir. 2007) (quoting *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 650 (1999). To prove a violation of Title IX based on student-on-student harassment, a Plaintiff must show four elements:

> First, the defendant must be a Title IX funding recipient. *Floyd v. Waiters,* 133 F.3d 786, 789 (11th Cir.), *vacated on other grounds,* 525 U.S. 802, 119 S.Ct. 33, 142 L.Ed.2d 25 (1998), *reinstated,* 171 F.3d 1264 (11th Cir.1999). Second, an "appropriate person" must have actual knowledge of the discrimination or harassment the plaintiff alleges occurred. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). "[A]n 'appropriate person' ... is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Id.* Third, a funding recipient is liable for student-on-student harassment only if "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." *Davis,* 526 U.S. at 633, 119 S. Ct. 1661. In considering this element, we analyze the conduct of the funding recipient, not the alleged harasser; we do this to ensure that we hold the funding recipient liable only if the funding recipient's deliberate indifference "subjected" the plaintiff to discrimination. *Id.* at 640–41, 119 S. Ct. 1661. Therefore, we will not hold a funding recipient liable solely because a person affiliated with the funding recipient discriminated against or harassed the plaintiff. *Hawkins v. Sarasota County Sch. Bd.,* 322 F.3d 1279, 1284 (11th Cir.2003). Fourth, the discrimination must be "so severe,

> pervasive, and objectively offensive that it effectively bars
> the victim's access to an educational opportunity or
> benefit." *Davis,* 526 U.S. at 633, 119 S. Ct. 1661.

*Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1293 (11th Cir. 2007).

The Motion to Dismiss primarily is based on FCSD's assertion that it cannot be held "vicariously liable for the bus driver's alleged indifference to the harassment of Doe," because the bus driver is not an "appropriate person" under Title IX. (Motion, Doc. 23-1) To that end, FCSD's Motion to Dismiss is focused largely on the second and third element above ("appropriate person" and deliberate indifference), and does not appear to dispute whether the school here is a Title IX funding recipient or if the discrimination alleged by Doe is "sufficiently severe." *Hill v. Cundiff*, 797 F.3d 948, 968–69 (11th Cir. 2015) (quoting *Davis,* 526 U.S. at 650). Accordingly, the Court is also focused on whether the FAC has alleged adequate facts to show the second and third elements.

### A. Element 2: "Appropriate Person"

An "appropriate person" is an official who "at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf." *Hill v. Cundiff*, 797 F.3d 948, 970–71 (11th Cir. 2015) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998). The Eleventh Circuit has described an "appropriate person," as a "school official … high enough up the chain-of-command that his acts constitute an official decision by the school district itself not to remedy the misconduct." *Hill v. Cundiff*, 797 F.3d at 970–71

(quoting *Floyd v. Waiters,* 171 F.3d 1264, 1264 (11th Cir. 1999)). "[T]he ultimate question of who is an appropriate person is necessarily a fact-based inquiry because officials' roles vary among school districts." *Doe v. Sch. Bd. of Broward Cnty. Fla.,* 604 F.3d 1248, 1256 (11th Cir. 2010). Courts must therefore, "look beyond title and position to the actual discretion and responsibility held by an official, and consider the type and number of corrective measures available to an official." *Saphir ex rel. Saphir v. Broward Cnty. Pub. Sch.*, 744 F. App'x 634, 638 (11th Cir. 2018). In *Moore v. Chilton County Board of Education*, the Middle District of Alabama found that a bus driver was not an appropriate person, but only because the Plaintiff failed to "present a factual basis for making that assessment, notwithstanding clear precedent that 'the ultimate question of who is an appropriate person is necessarily a fact-based inquiry.'" 1 F. Supp. 3d 1281, 1298–99 (M.D. Ala. 2014) (citing *Doe v. Sch. Bd. of Broward Cnty. Fla.,* 604 F.3d 1248, 1256 (11th Cir. 2010)). In *J.S.*, the Eleventh Circuit found that a teacher could be viewed as "an appropriate person" as teachers in that school district were expected to "assist in [the] enforcement of school rules, administration regulation[,], and school board policy" according to the school system's teacher job description.  877 F.3d at 989.

The parties dispute whether the facts alleged in the FAC plausibly show that the bus driver – the only school employee present during the alleged assaults – was an "appropriate person" such that his knowledge is attributable to the Defendant.

14

The Eleventh Circuit first considered in *Hawkins v. Sarasota Cnty. Sch. Bd.*, whether a teacher was an appropriate person, observing that, because the inquiry is a fact-intensive one, "whether notice to a teacher constitutes actual knowledge on the part of a school board" remained an open question. *Hawkins*, 322 F.3d 1279, 1286 (11th Cir. 2003). The court there explained that,

> In order to answer the question [of whether the students' teacher is an appropriate person], it would be necessary to examine how Florida organizes its public schools, the authority and responsibility granted by state law to administrators and teachers, the school district's discrimination policies and procedures, and the facts and circumstances of the particular case.

*Id.* The court said that the problem is even more difficult in situations of student-on-student harassment, because, "a much broader number of administrators and employees could conceivably exercise at least some control over student behavior." *Id.* Other courts have made a similar observation that this question is generally not appropriate for resolution on a 12(b)(6) motion, but better considered on summary judgment with a more developed factual record. *See, e.g., K.E. v. Dover Area Sch. Dist.,* No. 1:15-CV-1634, 2016 WL 2897614, at *9 (M.D. Pa. May 18, 2016) (denying motion to dismiss because "[w]hether a person qualifies as 'appropriate,' and their knowledge 'actual,' is a fact-based inquiry more appropriately resolved at a later stage of litigation"). Since *Hawkins* was decided in 2003, the Eleventh Circuit in *J.S.* squarely held that a teacher could be deemed "an appropriate person" for liability purposes based on the facts presented and that the ultimate resolution of this factual issue remained a jury issue for trial.  *J.S.,* 877 F.3d at 990.

The Court must read the FAC in the light most favorable to Plaintiff. It may well turn out to be the case, after the factual record is developed, that the bus driver is not an "appropriate person" such as is required to sustain Plaintiff's claims under Title II, Section 504, and Title IX. But Plaintiff has adequately pleaded facts in the FAC that the bus driver plausibly *could* be an appropriate person. Of primary importance in the Court's consideration of this issue is the alleged fact that the bus driver was the *sole* school employee present on the bus and was vested with supervisory and safety management responsibility for the students during their transportation, per the school district and state's job descriptions and policies. This responsibility and authority might be viewed as  further heightened when the school district determined it would remove the bus monitor who was allegedly assigned on account of the behavioral histories of students on the bus, including possibly those students who allegedly assaulted Doe, and because of Doe's specific needs for assistance in communication.[5]

The FAC alleges that the bus driver is charged with certain responsibilities and duties that – had they been executed – may reasonably have prevented the assaults on Doe. For instance, the FAC alleges that the bus driver is charged by state law with the following duties:

_____

[5] Plaintiff's allegations as to the features of the bus also reasonably might lead a jury to conclude that the bus was specially equipped to enable the bus driver to perform necessary supervisory and intervention duties. As discussed earlier, Plaintiff has alleged that the bus in question is substantially smaller than a standard school bus, and equipped with "electronic safety monitors so the Bus driver could monitor all passengers and ensure they remained seated at all times," as well as "a wide-view safety mirror that provided the Bus driver visual access of the interior of the Bus." (FAC, Doc. 21 at 6.) Accordingly, Plaintiff has alleged that the bus driver was aware of the harassment and sexual harassment allegedly occurring on the bus.

a.   Operate the school bus in a safe and efficient manner;

b.   Maintain order of student passengers;

c.   Report unsafe acts or conditions;

d.   Provide maximum safety for passengers while on the bus;

e.   Maintain student discipline on the bus to ensure student safety;

f.   The bus driver must have complete control of the bus to ensure the safety of everyone; and

g.   The bus driver must intervene when necessary.

(FAC, Doc. 21 at 8.) Hence, according to the FAC, the bus driver had "an express obligation to prevent, correct, and protect a passenger student from any act of discrimination, harassment, physical altercations, and sexual abuse that occurred on the Bus." (*Id.*) The Supreme Court noted in *Gebser* that an appropriate person is "an official of the recipient entity" who has "at a minimum, … authority to take corrective action to end the discrimination." 534 U.S. at 290; *see also Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1248 (10th Cir. 1999) ("It is possible that these teachers would also meet the definition of 'appropriate persons' for the purposes of Title IX liability if they exercised control over the harasser and the context in which the harassment occurred.") The facts in the FAC plausibly allege that the bus driver had authority to take immediate corrective action to end the harassment and assaults on Doe.

Doe also alleges that the bus was used by disabled students with needs different from those of non-disabled students. Accordingly, the school was on plain notice that the passengers of *this* bus might need more supervision or assistance than in other scenarios. In choosing to leave the care and supervision of these

children entrusted to only the bus driver, the school *may* have created a scenario in which the bus driver is the only person available to intervene in the type of harassment alleged in the FAC and with sufficient authority to act on behalf of the district. As discussed in *Hawkins*, this question is difficult to answer without the benefit of knowing how FCSD operated at the time, vested responsibility in bus drivers and the key personnel relating to the events and claims here, FCSD transportation and discrimination policies and protocols, and other factual circumstances. Although it may seem less likely in most scenarios for a bus driver to exercise such authority and responsibility, the Plaintiff has alleged sufficient facts here to make this an open factual question to be determined through further proceedings. *See Hill v. Cundiff*, 797 F.3d at 970–71.

When read in the light most favorable to Plaintiff, the FAC adequately alleges that the bus driver may plausibly be an "appropriate person" for purposes of stating a claim under Title II, Section 504, and Title IX. The bus driver may have been the only person capable of putting a stop to the sexual harassment and assaults or of putting the school board on notice of the alleged sexual assaults.

### B. Element 3: Deliberate Indifference

Compensatory damages are only available under Title II and Section 504 upon a showing of "discriminatory intent," which can be satisfied by a showing of deliberate indifference. *Liese*, 701 F.3d at 345. "Deliberate indifference...is an exacting standard." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (quoting *J.S., III by & through J.S. Jr. v. Hous. Cty. Bd. of Educ.*, 877

F.3d 979, 987 (11th Cir. 2017)) (internal quotation marks omitted). Showing deliberate indifference requires proof that the "defendant knew that harm to a federally protected right was substantially likely and … failed to act on that likelihood." *Id.* (quoting *Liese*, 701 F.3d at 344 (citation omitted).

In the *Liese* case, the Eleventh Circuit found that the Plaintiff had shown enough to support a claim of deliberate indifference, because when read in a light most favorable to the Plaintiffs, the record demonstrated that,

> at least one of [Defendant's] doctors (1) knew that [Defendant] had failed to provide Susan Liese with appropriate auxiliary aids necessary to ensure effective communication (the § 504 violation), (2) had the authority to order that aid be provided, and (3) was deliberately indifferent as to [Defendant's] failure to provide aid.

*Liese*, at 351. The Court reasoned that the doctor was on clear notice of the Plaintiff's need for auxiliary communication aids because Plaintiff had requested them and because the Doctor's attempts to communicate were obviously unsuccessful even in the moment. *Id.* The Eleventh Circuit found that the "deliberate indifference" element was met, because, "Dr. Perry never made any attempt to obtain any interpretive aid for Susan Liese. His apparent knowledge that Liese required an additional interpretive aid to effectively communicate with him and his deliberate refusal to provide that aid satisfies the deliberate indifference standard." *Liese*, at 351.

In the instant case, a constellation of factors combine to convince the Court that Plaintiff adequately has plead that FCSD was plausibly deliberately

indifferent. For one, Plaintiff alleges that FCSD was aware of a history of dangerous behavior by the two students who allegedly assaulted Doe, and that the district had previously installed a monitor to supervise the bus. FCSD alleges that this history did not include sexual misbehavior, but that is a factual question for another day. Furthermore, at some point in time prior to the alleged assaults, FCSD chose to remove the monitor, and leave all of the students on the bus in the sole care of the bus driver. This decision alone may prove critical in the deliberate indifference evidentiary equation, depending on other material facts such as the specific history of Students A and B, the particularized needs of Doe, the administrators' decision-making process, and other factors.

At this stage in the proceedings the Court must accept as true the factual allegation that the bus driver was invested with the authority to stop  the sexual assaultive behavior of Students A and B. If so, the bus driver's alleged failure to respond – if the bus was as fully equipped as described to permit the bus driver's own visual monitoring of the students,  and if other surrounding facts alleged are true – "quite plainly amounts to deliberate indifference." *See Murrell v. Sch. Dist. No. 1, Denver, Colo*., 186 F.3d 1238, 1248 (10th Cir. 1999). Additionally, Plaintiff's evidence adduced in connection with her allegations regarding FCSD's handling of special education transportation and Plaintiff's circumstances in this case (including Plaintiff's known restricted communication capacity) may provide a viable basis for establishing FCSD's "deliberate indifference".

### C. IDEA Exhaustion Requirement

In the Motion to Dismiss, FCSD asserts that "Plaintiff's newly pled claims relating to the bus monitor and iPad are barred because the IDEA [Individuals with Disabilities Act, 20 U.S.C. §§ 1400, et seq.] required Plaintiff to exhaust [her] administrative remedies before filing those claims in federal court." (Motion, Doc. 23-1 at 17 (heading).) FCSD explains that, "if the gravamen of a student's claim is the denial of FAPE ["free appropriate public education"], she must first exhaust the IDEA's administrative remedies before filing suit under the ADA, Section 504, or other federal statutes." (Doc. 23-1 at 17 (citing *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017)).) FCSD asserts "Plaintiff's claims arising out of FCSD's alleged failure to provide a bus monitor and functioning iPad are FAPE-related and therefore subject to administrative exhaustion." (Motion, Doc. 23-1 at 18.) Plaintiff contends, however, that she is seeking monetary relief as a remedy for the severe intentional discrimination, repeated sexual assaults and consequential personal injuries she suffered in violation of  the ADA, Section 504, and Title IX.  And she affirmatively argues she is not seeking an injunctive remedy to address a deficient IEP in connection with her computer or the assignment of a monitor, i.e., the denial of FAPE.[6]

The United States Supreme Court held in *Fry* that,

---

[6]  The injunctive relief sought in the FAC relates solely to the Open Records Act claim (that is, access to the bus video surveillance footage) – a s opposed to IDEA relief. Plaintiff similarly makes clear that she is not seeking injunctive relief under Title II of the ADA, § 504 of the Rehabilitation Act, or Title I and therefore that the Defendant's Motion to dismiss any claims for injunctive relief under these provisions is moot.  (Plaintiffs' Response Brief, Doc. 24 at 23-24.)

> Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit "seek[s] relief that is also available" under the IDEA. We first hold that to meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only "relief" the IDEA makes "available." We next conclude that in determining whether a suit indeed "seeks" relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint.

*Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. at 752. As the Eleventh Circuit in *J.S.*

explained further:

> The Supreme Court has proposed that courts ask a pair of hypothetical questions: first, whether the claim could have been brought if the alleged conduct occurred at a public facility outside of a school (such as a public theater or library); and second, whether it could have been brought by an adult at the school. If the answer to these questions is no, then the complaint likely concerns a FAPE violation under the IDEA. See id. For example, an allegation that a school building lacks access to ramps would likely state a claim under Title II, whereas an allegation that a student with a learning disability was not provided remedial tutoring in mathematics would likely assert a claim only for the denial of a FAPE. *See id.* at 756–57. Another factor to consider is the history of the proceedings and whether a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute. *See id.* at 757.

*J.S., III by and through J.S. Jr. v. Houston County Board of Education*, 877 F.3d

at 986. In *J.S.,* the plaintiff elementary school student with a disability was

allegedly regularly taken out of his class for discriminatory reasons and isolated

with a PE aide. *Id.* The Court recognized that while this claim could have been

brought under IDEA as a FAPE violation for failure to follow J.S.'s IEP, "we

conclude that it is also cognizable as a separate claim for intentional discrimination under the ADA and § 504." *Id.* The Court thus found it was error on the part of the district court to analyze Plaintiff's discriminatory isolation and segregation claim "as merely a FAPE violation under the IDEA." *Id.* at 987.

Plaintiff's allegations as a whole establish that Doe's intentional discrimination claims are ones that could have been raised regarding comparable conduct in a public facility, independent of any educational concerns. As in *J.S.*, although Defendant's conduct may have also violated Plaintiff's IEP, the gravamen of Plaintiff's' complaint addresses the alleged unlawful intentional discrimination, sexual assaults, and rape that Doe was subjected to in violation of the ADA, § 504, and Title IX and the resulting personal damages she suffered. *See Doe v. Dallas Indep. Sch. Dist.*, 941 F.3d 224, 227-28 (5th Cir. 2019) (holding exhaustion requirement not applicable where student with disabilities alleged sexual assault on school property and her special needs issues primarily provided "context that the school had notice regarding [her] inability to protect herself"). Accordingly, Plaintiff was not required to exhaust IDEA administrative remedies as a condition for bringing this legal action.

### D. Open Records Act

In Count IV, Plaintiff alleges that FCSD has "failed and wholly refused to provide counsel for Doe with a copy of the request surveillance video and audio footage [from the bus]." (FAC, Doc. 21 at 22.) According to the FAC, the school district is an agency within the meaning of the Open Records Act ("ORA") and must

"produce for inspection all records responsive to a request within a reasonable amount of time" under the ORA. (FAC, Doc. 21 at 22 (citing O.C.G.A. § 50-18-71(b)).) The ORA claim is whether the school violated Georgia's Open Record Act when it declined to share the audio and video footage from the bus, which purportedly shows the identities of the students involved in this case as well as others, not to mention the underage students in this case engaged in sexual conduct.  Plaintiff alleges that FCSD "did not act in good faith" in refusing the request, and that Doe is entitled to immediate production of the audio and video footage from the bus, plus the attorneys' fees and costs incurred in bringing this portion of the claim. (*Id*. at 23.)

In the Motion to Dismiss, FCSD argues that the video in question is not subject to disclosure under the Open Records Act because "it contains federally protected, confidential student information and depicts child pornography." (Motion, Doc. 23-1 at 21.) FCSD points to section 50-18-72(a) of the ORA, which includes categories of exemption from the production requirement. (*Id*.) FCSD points specifically to sections 50-18-72(a)(37) which prohibits disclosure of students' personally identifiable information, and 50-18-72(a)(32) which FCSD contends prohibits disclosure of child pornography. (*Id*. at 22.)

FCSD also argues that this Court lacks supplemental jurisdiction over this state law claim, because "it is unrelated to the federal claims" in this case. (Motion, Doc. 23-1 at 24.) Alternatively, FCSD argues that the Court should not exercise supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367(c)(1) and (4), provisions

which permit the Court to decline to exercise supplemental jurisdiction under specific circumstances.  28 U.S.C. §§ 1367(c)(1)  and (c)(4) provide:

> (c)  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1) the claim raises a novel or complex issue of State law, [...]
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In this connection, Defendant argues that this Court would be required to "resolve at least two issues of first impression: (1) whether the video is exempt from the ORA's production requirements; and (2) whether the FCSD or its attorneys could incur felony criminal liability for producing such materials."  (Doc. 23-1 at 30.)

Plaintiff points out a variety of district court cases where claims regarding the Defendant's refusal to respond fully to the plaintiff's Georgia Open Records Act requests were deemed sufficiently related to the federal claims in the action for the Court to exercise supplemental jurisdiction over the state ORA claims, pursuant to 28 U.S.C. § 1367(a).[7] (Doc. 24 at 24.) *See, e.g., Akins v. Atlanta Independent Sch. System*, No. 1:15-cv-00364-ELR, 2015 WL 13694594, at *4 (N.D. Ga. Sept 29, 2015); *but see, Ford v. City of Oakwood*, Ga. 905 F. Supp. 1063, 1066 (N.D. Ga. 1995) (finding that the Open Records Act legal claim itself was not related to the underlying issues raised by Plaintiff's lawsuit). Plaintiff argues that the ORA issues

---

[7] 28 U.S.C. § 1367(a). provides: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

posed are factual, not legal ones. Neither party directly addresses any case authority regarding the ORA legal issues that Defendant raises here.

The Court recognizes that it may exercise supplemental authority over Plaintiff's Open Records Act claim but declines in its discretion to do so pursuant to 28 U.S.C.A. § 1367(c)(1). At this juncture, the Court views the ORA questions posed as falling potentially in a murky and novel legal terrain that would take some time to resolve and which would only further delay this case from moving forward promptly.

## IV.    Conclusion

Defendant FSCD's Motion to Dismiss is **DENIED** as to Counts I, II, and III. [Doc. 23] The Court declines to exercise supplemental jurisdiction over Plaintiff's Open Records Act claim and therefore **DISMISSES Count IV** without prejudice. Accordingly, Defendant's Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. [Doc. 23.]

The Court  authorizes discovery to immediately commence upon the filing of this Order. The video and audio footage at issue in the ORA requests are clearly vital to the Plaintiff's capacity to properly litigate this case and potentially, to the Court's review of future disputes in this case. At this juncture, the Court sees no basis for Defendant's further objection to production of these tapes in response to a Request for Production pursuant to Fed. R. Civ. Pro. 34, subject to an appropriate court-approved confidentiality order.

Accordingly, Plaintiff is authorized immediately to serve a request for production relating to the bus video and audio recordings and a proposed consent confidentiality order on Defendant's counsel. Given the length of time that has already elapsed and the actual simplicity of the production at issue, Defendant is required to respond to this specific request for production within **fifteen days** of electronic service of the request for production. If Defendant asserts any objections,[8] the parties are directed to confer regarding submission of a joint discovery statement, consistent with the Court's Guidelines for resolution of discovery disputes, and file such within 7 days of Defendant's service of its objections.

**IT IS SO ORDERED** this 23rd day of March, 2021.

**Honorable Amy Totenberg**
**United States District Judge**

---

[8] The Court directs the Defendant at the same time to address any objections or concerns regarding the proposed confidentiality order. The Court will review and approve the proposed confidentiality order, assuming the Court finds its terms proper and acceptable.